**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 14-cr-10143-WGY** |
| | ) | |
| **JOSH A. WAIRI,** | ) | |
| **Defendant.** | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**
**FOR DEFENDANT JOSH A. WAIRI**

The United States of America, by and through its attorneys, Carmen M. Ortiz, United

States Attorney for the District of Massachusetts, Suzanne Sullivan Jacobus and Seth B. Orkand,

Assistant United States Attorneys, hereby submits this sentencing memorandum in anticipation

of Defendant Josh A. Wairi's ("Wairi" or "Defendant") sentencing hearing scheduled for

September 14, 2015.

## I.    INTRODUCTION

On May 5, 2015, after a five-day jury trial, Defendant was convicted of one count of

Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1), and one count of

Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  The jury

acquitted Defendant of three counts of Production and Attempted Production of Child

Pornography.  Presentence Investigation Report revised Sept. 4, 2015 ("PSR"), ¶ 2.  As a result

of his conduct in connection with the offenses for which he was convicted, Defendant faces a

guideline sentencing range ("GSR") of 188 months to 235 months.  Defendant's relatively high

GSR reflects the seriousness of his offense.  Indeed, of the six sentencing enhancements

available under the relevant guideline, U.S.S.G. § 2G2.2(b), the Court found on May 29, 2015,

that Defendant qualified for four of them: a two-level increase because the material involved a

prepubescent minor or a minor who had not attained the age of 12 years, pursuant to U.S.S.G. §

2G2.2(b)(2); a five-level increase because the offense involved the distribution of child

pornography for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary

gain, pursuant to U.S.S.G. § 2G2.2(b)(3)(B); a two-level increase because the offense involved

the use of computer or an interactive computer service, pursuant to U.S.S.G. § 2G2.2(b)(6); and

a five-level increase because the offense involved 600 or more images, pursuant to U.S.S.G. §

2G2.2(b)(7)(D) cmt. 4(B)(ii).  *See* PSR, ¶¶ 68-71.  In light of the facts presented in this case, and

Wairi's breach of his position of trust in the community, the United States recommends that

Defendant be sentenced as follows: a sentence of 188 months of imprisonment; ten years of

supervised release with specific conditions; a $200 special assessment; forfeiture as determined by

the Court; and restitution as determined by the Court.  Additionally, pursuant to 18 U.S.C. § 2253,

there is also a criminal forfeiture allegation.

## II.     U.S.S.G. CALCULATIONS/SENTENCING ENHANCEMENT

### A.     Legal Framework

The advisory United States Sentencing Guidelines ("Guidelines") are "the starting point

and the initial benchmark" in sentencing.  *Gall v. United States,* 552 U.S. 38, 49-50 (2007).  The

Guidelines must be properly calculated and considered, but ultimately the Court must craft a

sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C.

§ 3553(a).  *Id*. at 49-50.  Because each case is unique, the Court must make a particularized

analysis of the nature and circumstances of the offense and the defendant's history and

characteristics. 18 U.S.C. § 3553(a)(1).  The Court must then impose a sentence that sufficiently

reflects the seriousness of the crime, promotes respect for the law, and provides just punishment.

18 U.S.C. § 3553(a)(2)(A).  The sentence should adequately deter criminal conduct, protect the

public, and provide any necessary education, training or treatment.  18 U.S.C. §§ 3553(a)(2)(A)-

(D).  After determining the appropriate sentence, the Court should adequately explain its

rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Court must also strive to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant faces a minimum mandatory sentence of 60 months and a maximum sentence of 20 years on his conviction for Transportation of Child Pornography. *See* PSR, ¶ 128. Defendant faces a maximum sentence of 20 years on his conviction for Possession of Child Pornography. *See* PSR, ¶ 128. The PSR correctly indicates that the Guidelines and statutory term of supervised release is five years to life. *See* PSR, ¶ 133, and 18 U.S.C. § 3583(k).

### B.    The Sentencing Guidelines are Reasonable

#### 1.    The United States Sentencing Commission's 2013 Report Emphasizes the Seriousness of Non-Production Cases

In late-filed objections to the PSR, Defendant argued for a substantial downward departure from the GSR because the Guidelines are "substantively unreasonable." Defendant cherry-picked selective portions of the United States Sentencing Commission ("Sentencing Commission") Report to Congress to support his claim, and in doing so, mischaracterized the Sentencing Commission's conclusions. *See* United States Sentencing Commission, Report to Congress: *Federal Child Pornography Offenses* (Feb. 27, 2013), *available at* http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses (last visited Sept. 3, 2015) (hereinafter, "Report"). The Report confirms the extreme and multifaceted damage caused by child pornography. The Report's first conclusion states unequivocally:

> All child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children.

> Child pornography offenses inherently involve the sexual abuse and exploitation of children.  Victims are harmed initially during the production of child pornography, but the perpetual nature of the distribution of images on the Internet causes a significant, separate, and continuing harm to victims . . . .
>
> Child pornography offenses are international crimes.  Countless images depicting the sexual abuse of children are transmitted both domestically and internationally to offenders across the world, each of whom may redistribute the same image.  Once an image is distributed via the Internet, it is impossible to eradicate all copies of it or to control access to it.  The harm to victims is thus lifelong.
>
> Non-production child pornography offenses normalize and validate the sexual exploitation of children, which contributes to the sexual abuse of new victims . . . .

Report at 311 (internal citations omitted).

The Report's emphasis on the horrendous impact of child pornography brings into clear focus what courts have known for some time—that child pornography has a permanent and highly destructive impact on the most vulnerable segment of society.  Not only does the distribution, receipt, and possession of child pornography devastate individual children, it perversely validates, for consumers of child pornography, the sexual exploitation of increasingly younger children.

**2.      The Report's Proposed Changes to the Child Pornography Guidelines Highlight, rather than Diminish, the Seriousness of Defendant's Conduct**

The Report outlined broad recommendations for revisions to the child pornography Guidelines to better reflect the Sentencing Commission's findings and the present state of the child pornography landscape.  Report at 322.  These proposed revisions distinguish Wairi from other defendants accused of child pornography offenses.

The Report proposed the following three categories of offender behavior as "the primary factors that should be considered in imposing sentences in § 2G2.2 cases:

> 1)     the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained and protected his collection over time, including through the use of sophisticated technology);
>
> 2)     the degree of an offender's engagement with other offenders - in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation; and
>
> 3)     whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense."

*Id.* at 320.

The Sentencing Commission also noted that:

> [t]he presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

*Id.* at 321.

The Sentencing Commission explained that its first recommended area of amendment was intended to "account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images and other aspects of an offender's collecting behavior reflecting his culpability (*e.g.* the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)." *Id.* at 323.

A revision to the Guidelines to reflect the nature, volume, and level of organization of the images and videos would *accentuate*, rather than diminish, Wairi's criminal behavior. Defendant possessed at least 26,000 images and 500 videos depicting child pornography (resulting in a total of more than 65,000 images under the current Guidelines).  Any revision reflecting the volume of Defendant's collection would presumably ensure that Defendant received the maximum enhancement for the number of images.  Regarding the nature of the collection, evidence at trial showed that he possessed material depicting children as young as toddlers engaged in sexually explicit conduct.  Any revision reflecting the age of the victims would likely maintain or increase the current two-level increase that Defendant receives for prepubescent depictions.

A revision to the Guidelines to reflect a defendant's engagement with other offenders would also likely increase Defendant's GSR.  During the execution of the search warrant at his residence, Wairi told United States Postal Inspection Services ("USPIS") Inspectors that: (1) he traded images of child pornography with about ten other individuals whom he met on a Russian website;[1] (2) he was a member of the Russian website for more than one year; (3) he uploaded images and videos of child pornography to Dropbox and provided other individuals access to his Dropbox account with a link and a password; and (4) the majority of the images in his collection were received from other users that he met on the Russian website.  The evidence presented at trial showed that Defendant was involved in the child pornography community, and that he procured his vast collection of child pornography by communicating and trading images and videos with other individuals in this community.

---

[1] At trial, USPIS Inspector Scott Kelley testified that this Russian website is commonly used to trade and view images of children being sexually exploited.

All of these factors reflect a sexual interest in children that is deserving of increased punishment and will be further addressed in conjunction with the factors to be considered under 18 U.S.C. § 3553(a), discussed below.

### 3. United States Probation's Calculation of Defendant's Offense Level

The United States Probation Office has determined that under U.S.S.G. § 2G2.2(a)(2), Defendant's base offense level is 22; with a 2 level increase under U.S.S.G. § 2G2.2(b)(2), because the material involved a prepubescent minor or a minor who had not yet attained the age of 12 years; an additional 5 level increase under U.S.S.G. § 2G2.2(b)(3)(B) cmt. 1, since the offense involved the distribution for the receipt, or expectation or receipt, of a thing of value (additional pornography); an additional 2 level increase under U.S.S.G. § 2G2.2(b)(6), because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material; and an additional 5 level increased under U.S.S.G. § 2G2.2(b)(7)(D), since the offense involved 600 or more images. *See* PSR, ¶¶ 67-71. The resulting total offense level is 36. *See* PSR, ¶¶ 75-78. The PSR notes that Defendant's criminal history category is I. *See* PSR, ¶ 83. With a total offense level of 36 and a CHC of I, Defendant's GSR is 188 months to 235 months. A Guidelines sentence is appropriate here, and the First Circuit has upheld such sentences for child pornography cases. *See*, *e.g.*, *United States v. Clogston*, 662 F.3d 588 (1st Cir. 2011).

Defendant's GSR reflects both the seriousness of Defendant's conduct and the seriousness with which Congress and the Sentencing Commission view the sexual exploitation of minors. A sentence within that range is necessary to account for the factors that the Court must consider under 18 U.S.C. § 3553(a). The government believes that its recommendation is fair and reasonable and would adequately meet the sentencing objectives outlined in 18 U.S.C. § 3553(a).

### III.     THE DEFENDANT MERITS THE REQUESTED SENTENCE

#### A.     Credit for Acceptance of Responsibility is Not Warranted Under U.S.S.G. §§ 3E1.1(a) and (b)

In his objections to the PSR, Defendant argues that he should be awarded a three-level reduction for acceptance of responsibility because Defendant "has always accepted responsibility for his actions . . . and now fully appreciates the harm he has caused." This is simply not the case. In support of his argument, Wairi asserts "the government should not be permitted to unreasonably withhold the third point [for acceptance of responsibility] where the defendant offered to plead guilty to each charge that resulted in a conviction." The government is not being unreasonable in withholding its support for a three-level reduction. The fact remains that Defendant opted to proceed to trial on each of the five counts in the Superseding Indictment. As such, the government prepared for and proceeded to trial on each count. Additionally, post-trial, Defendant contested the sentencing enhancements. The time-consuming efforts undertaken by the government to prepare for trial and for the sentencing enhancement hearing should satisfy the Court as to why the government objects to the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and as to why the government declines to recommend that Defendant receive a third point pursuant to U.S.S.G. § 3E1.1(b).

Additionally, contrary to Defendant's assertion in his objections to the PSR that he fully appreciates the harm he has caused, Defendant failed to fully comprehend the gravity of his criminal actions or express remorse even after he was caught. Rather, in statements to USPIS on the date of his arrest, Defendant *minimized* the effect of his criminal conduct, stating "I know it's not right but looking at pictures are one thing but I would never hurt a kid." *See* PSR ¶ 39. Even post-trial, when he was interviewed by U.S. Probation, Defendant stated he became involved in the instant offense merely out of "curiosity," failing to admit or take responsibility for his sexual

interest in children.  *See* PSR ¶ 108.  Defendant has not accepted responsibility for his criminal

actions and should not be awarded a reduction in his GSR offense level.

### B.        The Nature and Circumstances of the Offenses

The government urges the Court to consider the nature and circumstances of the offenses

and to recognize the seriousness of his offenses and their effect on Defendant's victims.  *See* 18

U.S.C. § 3553(a)(1).  The facts of this case are extremely disturbing and merit a lengthy prison

sentence.  Defendant is an intelligent, well-educated man who clearly knows right from wrong.  Until

the date of his arrest in this case, he had been employed as an elementary school teacher in

Cambridge and prior to that in the Somerville Public School systems and as a babysitter in the

community.  Yet, notwithstanding his education and employment teaching and caring for children,

his illicit Internet activity with other like-minded child pornography collectors and traders was not a

mistake.  Defendant admitted to USPIS Inspector Scott Kelley that he was sexually attracted to

children and that his ideal age for a child was about 8 to 13 years old.  This is consistent with his

statements in his online profile on the Russian website.  *See* PSR ¶ 40.

Defendant's collection involved a truly vast amount of child pornography – more than

26,000 image files and more than 500 video files.  These files depicted children under the age of

18 engaged in sexually explicit conduct including oral sex, anal sex, masturbation, children

engaged in sexually explicit conduct with adults, and children engaged in sexually explicit

conduct with other children.  The National Center for Missing and Exploited Children has

identified ***more than 125 known children*** as victims depicted in Wairi's collection.  Most of the

minors depicted in the videos and image on the thumb drive were boys.  Some of the children

乾

videos in his collection of children as young as 7 or 8.  However, in reality, forensic examination

of Defendant's computer and thumb drive determined that the subjects of Defendant's collection

of child pornography actually included children as young as toddlers.  Representative samples of these images of toddlers were introduced at trial as exhibits #30, 31, 32.  *See* PSR ¶ 40. Defendant's criminal actions, pattern of illicit activity and viewing of the sexual exploitation of minor children, some as young as toddlers, for his own sexual gratification, are appalling.

Defendant downplayed the volume of his child pornography collection when he admitted to USPIS that he possessed hundreds of images and videos of children being sexually exploited when in fact forensic analysis revealed more than 26,000 image files and more than 500 video files.  However, he accurately described the content of his collection as including depictions of children posing with their genitals exposed to more "hard core, kids in sex acts."  Additionally, Wairi recalled that his collection included images or videos of sexual exploitation of children, including a video of a child who was tied up with his hands and feet behind his back performing oral sex on an adult male.  He stated he viewed the images of child pornography for sexual self-gratification and masturbated to these images of child pornography on a weekly basis.  He admitted that these images and videos of children sexually aroused him.  *See* PSR ¶ 36.

The evidence at trial showed that Defendant painstakingly organized his extensive collection into folders.  Many of the images and videos were located in a folder named "b" (for "boys" and which contained 5,525 files/images in a sub-folder with the majority of those consisting of child pornography involving minor boys), and some were located in a folder named "g" (for "girls" and which contained 132 files in a sub-folder with the majority of those consisting of child pornography involving minor girls).  Defendant also stored files in folders named "G&P," "Healey," and "Kennedy," corresponding to schools where children were entrusted to Defendant's care (and where Defendant filmed children naked).[2]  Within the

---

[2] It is appropriate for the Court to consider the Defendant's conduct filming naked children in the shower at the Nature's Classroom and in the locker room at the Kennedy Pool to determine Defendant's appropriate sentence.

"Kennedy" folder, USPIS identified five separate videos named "Boy Bum.wmv," "Little.wmv,"

"Pool.wmv," "Minor C-front.wmv" (this was the subject of count 4), and "Minor C-back.wmv."

Within the subfolder named "Healey," USPIS found 12 separate videos named with the first

names of minor boys who attended the Nature's Classroom field trip in October 2011.  Within a

folder named "New Folder," USPIS identified subfolders named "A$$," "Amigos," "Changing,"

"Clothes," "Kissing," "Little," "MySpace," "Oops," "PEN15," "Sets," Special," and "Videos."

The child pornography located on the thumb drive was saved there as early as December 2012,

and the thumb drive was accessed as recently as the day prior to his arrest in April 2014.

Numerous courts have emphatically expressed the wretched consequences of child

pornography.  In *United States v. Goff*, 501 F.3d 250, 258-59 (3rd Cir. 2007), the Court noted:

> Children are exploited, molested, and raped for the prurient
> pleasure of [the defendant] and others who support suppliers of
> child pornography.  These small victims may rank as 'no one else'
> in [the defendant's] mind, but they do indeed exist outside his
> mind.  Their injuries and the taking of their innocence is far too
> real.  There is nothing 'casual' or theoretical about the scars they
> will bear from being abused for [the defendant's] advantage.

In *United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed*

669 F.3d 723 (6th Cir. 2012), the District Court imposed a guidelines sentence on a child

pornography defendant.  In denying the defendant's challenge to the legitimacy of the child

pornography guidelines, the same one which applies to Wairi, the Court reasoned:

> There can be no keener revelation of a society's soul than the way
> in which it treats its children.  Given the current statistics
> surrounding child pornography, we are living in a country that is
> losing its soul.  Child pornography is a vile, heinous crime.
> Mention the term to your average American and he responds with
> immediate disgust and a sense of unease.  However, once it enters

---

The government acknowledges that the jury found that these videos did not constitute child pornography.  However, notwithstanding Defendant's acquittal on production charges, Wairi still profoundly violated the trust of the children whom he surreptitiously recorded.  .

> the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

Here, the requested sentence is warranted by the vastness of Defendant's child pornography collection. As the Fifth Circuit explained, consumers of child pornography, such as Wairi, "victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *United States v. Norris*, 159 F.3d 926, 930 (5th Cir. 1998). Similarly, the Third Circuit recognized:

> Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'

*United States v. MacEwan*, 445 F.3d 237, 250 (3rd Cir. 2006) (internal citation omitted).

Moreover, "[c]hild pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of their degradation." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, Morality in Media (2001), *available at* http://www.moralityinmedia.org/pornsEffects/clineart.htm. "[T]he 'victimization' of the children involved does not end when the pornographer's camera is put away." *Norris*, 159 F.3d at 929.

### 1.     The Court Should Apply the Relevant Sentencing Enhancements

The Court has already found that the United States proved four sentencing enhancements beyond a reasonable doubt. However, it bears repeating as to why the Court should apply these enhancements in this case.

First, the Court should apply a two-level increase, pursuant to pursuant to U.S.S.G. § 2G2.2(b)(2), because the material in Defendant's collection involved a prepubescent minor or a minor who had not attained the age of 12 years.  In particular, the United States presented evidence at trial demonstrating that Defendant's collection included an image of a female toddler with an adult hand touching her vagina and spreading apart her labia (Tr. Ex. #30), an image of a naked male toddler with his legs spread apart with an adult penis touching his penis (Tr. Ex. #31), and an image depicting an adult hand touching the naked penis of a toddler who appears to be wearing a yellow sweater (Tr. Ex. #32).  These are merely representative *examples* of images recovered from Defendant's laptop computer that depict prepubescent children younger than 12 years old engaged in sexually explicit conduct.

Second, the Court should apply a five-level increase, pursuant to U.S.S.G. § 2G2.2(b)(3)(B), because Defendant's offense involved the distribution of child pornography for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain.  The Application Notes clarify that distribution "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit.  U.S.S.G. § 2G2.2 cmt. n.1 (2014).  "Thing of value" means anything of valuable consideration.  *Id.*  For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.  *Id*.

The evidence at trial demonstrated that Defendant transported child pornography with the expectation of receiving child pornography in return.  USPIS Inspector Kelley testified that during an interview of Wairi, he admitted using his email account to trade and distribute images

of child pornography.  PSR, ¶ 33.  Defendant further admitted that he met people to trade images

of child pornography on a Russian website, and he initialed screen capture of his account profile

from that website during his interview.  A copy of that document was introduced into evidence at

trial.  *See* Tr. Ex.# 53.  That exhibit includes the following statement:  "***NEW EMAIL

ADDRESS*** I LOVE boys 8 to 13.  Send me pictures and videos and I will send back.  I have

a TON of pictures and videos.  This is my first time.  Happy Browsing."  *Id.*

Third, the Court should apply a two-level increase, pursuant to U.S.S.G. § 2G2.2(b)(6),

because the offense involved the use of computer or an interactive computer service.  At trial,

USPIS Forensic Analyst Mark Scichilone testified that Defendant's Dell mini-computer

contained over 2,200 images and 85 videos depicting minor children, mostly boys, under the age

of 18 engaged in sexually explicit conduct.  *See* PSR, ¶ 55.

Lastly, the Court should apply a five-level increase, pursuant to U.S.S.G. §

2G2.2(b)(7)(D), because the offense involved 600 or more images.  In fact, the evidence

presented at trial proved that Defendant's collection included over 26,000 images and 500 video

files (with each video counting as 75 images for purposes of the guidelines calculation, pursuant

to Application Note 4(B)(ii)).  With the Defendant's collection including more than *100 times*

the 600 images contemplated by § 2G2.2(b)(7)(D), Defendant's offense level should be

increased to adequately account for the volume of his child pornography collection and the harm

done to the numerous victims depicted in the images possessed by Defendant.

## C.     History And Characteristics Of The Defendant

The personal characteristics of Defendant weigh in favor of the requested sentence.  *See*

18 U.S.C. § 3553(a)(1).  Here, the overriding aspect of Defendant's personal characteristics is his

clear sexual interest in children, which raises a substantial risk of recidivism. Defendant's risk of

recidivism is underscored by the findings of Congress, the courts, and researchers:

> Congress has repeatedly reiterated that recidivism rates are
> particularly high for child sex offenders.  *See* Blaisdell, Krista,
> Note, *Protecting the Playgrounds of the Twenty-First Century:*
> *Analyzing Computer and Internet Restrictions for Internet Sex*
> *Offenders*, 43 Val. U. L. Rev. 1155, 1192, n. 150 (2009)
> (compiling Congressional statements regarding the high risk of
> recidivism among child sex offenders).  Similarly, the Eleventh
> Circuit has recently noted that "child sex offenders have appalling
> rates of recidivism and their crimes are under-reported."  *United*
> *States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008).  In addition,
> one study of sex offenders found an overall recidivism rate of
> 31.7%. Kingston, Drew, et al., *Pornography Use and Sexual*
> *Aggression: The Impact of Frequency and Type of Pornography*
> *Use on Recidivism Among Sexual Offenders*, Aggressive Behavior,
> Volume 34 (2008)[].  The predicted odds of recidivism increased
> by 177% among the offenders that viewed deviant pornography,
> such as child pornography. Moreover, the predicted odds of violent
> recidivism, including sexually violent recidivism, increased by
> 185% for this group.  The predicted odds of any type of sexual
> recidivism increased by 233% for the group that admitted to
> viewing deviant pornography. This increased risk of recidivism
> among sexually deviant offenders has also been found in earlier
> studies, including a meta-study from 1996.  *See* Hanson, R. Karl,
> and Monique Bussiere, *Predictors of Sexual Recidivism: A Meta-*
> *Analysis*[].

*Cunningham*, 680 F.Supp.2d at 855.

Also relevant to the imposition of a sentence is Wairi's role as a teacher and caretaker of

children.  Notwithstanding the fact that Defendant was acquitted of production of child

pornography, it was undisputed at trial that he used his access to children to record videos of

children naked in the shower during a school field trip and changing in a locker room at a school

in Somerville.  Testimony at trial established that Defendant comingled these videos with his

child pornography collection, and he admitted to masturbating while watching the videos of

children that he recorded.  Members of the Somerville and Cambridge communities have been

traumatized by the revelation that their teacher and babysitter had a sexual interest in children,

and exploited his access to children in order to record videos of them naked.  By his actions,

Defendant has betrayed the trust of his students as well as the school communities where he was

employed.  Consider the words of a parent of one of the children whom Wairi videotaped:

> How has my life been impacted by knowing that a pedophile
> named Josh Wairi, a teacher, a tutor, a babysitter, a person who
> children looked up to, secretly videotaped my nine year old son
> and used the images to masturbate to?  And, he included these
> "images" in his extensive child pornography collection of more
> than 26,000 "images" and more than 500 videos? . . . I now have
> an inherent mistrust of men who work with children, especially
> young children, and have an internal dialogue with myself to make
> sure that I keep my prejudices in check while at the same time
> "trusting my gut."  This often leads to a sense of dread and anxiety
> . . . . It's left me with a sense of vulnerability for both of my
> children, but especially for my son . . . . One of the worst
> realizations, besides the fact that a teacher who used to work in my
> children's school actually did this to us, was the realization that he
> was like all other pedophiles – he never wanted to be a teacher, he
> just wanted to be around young, little boys and he found multiple
> ways of surrounding himself with young children.

*See* Victim Impact Statement of VNS No. 4314142, attached to the PSR.

There was nothing stopping Wairi from being an asset to the communities where he

taught and where he lived.  But he instead decided to exploit children for his own sexual interest.

Wairi chose to pursue his own sexual gratification in flagrant disregard for the welfare of these

minor victims.

**D.      The Requested Sentence Is Needed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses and Afford Specific and General Deterrence**

Defendant has negatively affected the lives of numerous children through his

contributions to the market of child exploitation.  In fact, the National Center for Missing and

Exploited Children has identified ***more than 125 known children*** who were depicted in Wairi's

collection.  The requested sentence is "sufficient, but not greater than necessary," to accomplish

these goals.  *See* 18 U.S.C. § 3553(a).

Imposing serious penalties on those who seek, view, trade and save child pornography serves the interest of the victims portrayed in these images. The transportation of child pornography via the Internet enables images and videos depicting the sexual abuse of a child to be circulated in perpetuity because individuals like Wairi make purposeful decisions to share their collections with others. Wairi's transportation of child pornography in this case unequivocally contributed to the continuing trauma experienced by the abused children depicted in his collection. These children often live with the knowledge that there are numerous, unknown individuals in the world who are sexually gratifying themselves with pictures of the worst moments of the children's lives, and that such exploitation will continue indefinitely. *See United States v. Blinkinsop,* 606 F.3d 1110, 1118 (9th Cir. 2010) (finding that "[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"). In *New York v. Ferber*, the U.S. Supreme Court noted:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

Consumers of child pornography, such as Wairi, also create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See Goff,* 501 F.3d at 259-260. In *United States v. Goldberg,* the Seventh Circuit stated:

17

> The district judge was influenced by the erroneous belief that a
> sentence affects only the life of the criminal and not the lives of his
> victims.  Young children were raped in order to enable the
> production of the pornography that the defendant both downloaded
> and uploaded-both consumed himself and disseminated to others.
> The greater the customer demand for child pornography, the more
> that will be produced.

491 F.3d 668, 672 (7th Cir. 2007) (internal citations omitted).

Possession of child pornographic images is not a victimless crime.  On the contrary,

many, many young children have been victimized and continue to be victimized because of the

desires of people like Wairi.  The Fifth Circuit has recognized that child pornography offenses

are significantly different from other offenses involving children in that there are "numerous

victims in a case like this, not one victim.  Every image of a child, every image of a non-adult

engaged in any type of sexual activity or any type of pose without clothing or any type of

exploitation constitutes an additional case of victimizing the child.  *See United States v. Miller*,

665 F.3d 114, 121 (5th Cir. 2011).  These images of children feed the desires of collectors of

child pornography.

The United States submits that a significant period of incarceration will appropriately

serve as both a general and a specific deterrent to future conduct involving the exploitation of

children.  In regard to 18 U.S.C. § 3553(a)(2)(B), Defendant's sentence should be within the

GSR as calculated by U.S. Probation in order to deter both Defendant as well as the criminal

conduct of others.  As stated in *United States v. Goldberg*, "[s]entences influence behavior, or so

at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing

factor.  The logic of deterrence suggests that the lighter the punishment for downloading and

uploading child pornography, the greater the customer demand for it and so the more will be

produced." 491 F.3d at 672; *see also Goff*, 501 F.3d at 261 (stating in child pornography

possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing").

The availability of child pornography has grown exponentially over the Internet, and online communities validate and promote child sexual exploitation.  Imposing serious penalties on individuals who fuel this market may deter other individuals from joining in its ranks.  These child victims are not abstractions or objects—they are real people who experienced sexual abuse or sexual exploitation for these pictures or images to be produced.  A significant term of imprisonment reinforces, to the Defendant and others who are tempted to follow in his footsteps, that these crimes are exceedingly grave in nature, thereby promoting respect for the law and to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society.

### E.  Supervised Release

As set forth above, Defendant has demonstrated a clear sexual interest in children which led him to accumulate a vast amount of child pornography.  Defendant poses a danger because he acts on deviant prurient interests and also does not fully appreciate his conduct.  The government respectfully recommends a ten-year term of supervised release with special conditions.  A lengthy term of supervised release is essential to ensure that Defendant completes a certified sex offender program selected by U.S. Probation, mental health evaluation and counseling as deemed appropriate by U.S. Probation, and that his computer use and access to children are restricted and monitored.  The government further requests Defendant have no contact with minors under the age of 18 during the pendency of his supervised release except in the presence of another adult approved by U.S. Probation, including at work.  This term is reasonable, as courts have approved much larger terms of supervised release.  *See, e.g., United*

*States v. Allison*, 447 F.3d 402 (5th Cir. 2006) (affirming imposition of lifetime supervised

release for defendant convicted of possession of child pornography); *United States v. Cope*, 506

F.3d 908, 916 (9th Cir. 2007) (affirming imposition of lifetime term of supervised release for

defendant convicted of possession of child pornography who had a prior conviction for

attempted sexual assault on a child).  Additionally, pursuant to the Sex Offender Registration and

Notification Act and the laws of the Commonwealth of Massachusetts, Defendant is required to

register as a sex offender and to keep that registration current.

## IV.    CONCLUSION

Defendant has participated in some of the most vile and heinous crimes in our society,

namely, victimizing children.  The Supreme Court, Congress, and courts across the country have

repeatedly recognized the pain and suffering caused by the sexual exploitation of children.   These

children are real people who experienced unimaginable horror in order for these pictures and videos

to be produced.  A sentence of 188 months of imprisonment, ten years of supervised release with

standard and special conditions, forfeiture, and a $200 special assessment addresses the severity of

his crimes.  Such a sentence is sufficient, but not greater than necessary, to achieve the goals set forth

in 18 U.S.C. § 3553(a).

<div style="margin-left:50%;">

Respectfully submitted,
CARMEN M. ORTIZ
United States Attorney

By:    /s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

/s/ Seth B. Orkand
Seth B. Orkand
Assistant U.S. Attorney

</div>

Dated: September 9, 2015

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

*/s/ Seth B. Orkand*
Seth B. Orkand
Assistant U.S. Attorney