UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————— )
UNITED STATES OF AMERICA )          CASE NO: 1:14CR10143WGY
                         )
V.                       )
                         )
JOSHUA WAIRI             )
———————————————————— )

## DEFENDANT'S SENTENCING MEMORANDUM

I. BACKGROUND                                                                                    2

  A. DEFENDANT'S BACKGROUND                                                          2

  B. FACTS OF THE CASE                                                               5

  C. PROCEDURAL SENTENCING FRAMEWORK                                                 7

II. APPLICATION OF THE 18 U.S.C. § 3553(a) SENTENCING FACTORS                                    8

  A.   NATURE & CIRCUMSTANCES OF THE OFFENSES, AND THE HISTORY & CHARACTERISTICS OF JOSHUA WAIRI                                                                                     8

  B. THE  NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT & AFFORD ADEQUATE DETERRENCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT                 11

  C. THE  KINDS OF SENTENCES AVAILABLE                                               16

  D. THE  KINDS OF SENTENCES AVAILABLE AND SENTENCING RANGE PURSUANT TO THE GUIDELINES 17

  E. ANY PERTINENT POLICY STATEMENT                                                  26

  F. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES                               26

  G. THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS                                   28

III. CONCLUSION                                                                                 29

Exhibit 1:  Letters of Support                                                                  32

Exhibit 2:  Psychosexual Evaluation                                                             50

The defendant, Joshua Wairi, submits this sentencing memorandum in support of a sentence of five years (sixty months) in prison, followed by ten years (one hundred and twenty months) of supervised release with conditions. The defendant submits that this sentence is "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a), and reflects the nature and circumstances of Joshua as a person, and of his offense.

The reasons supporting the above-described sentence include:

(1)  Josh's acceptance of responsibility for his convicted conduct;

(2)  Josh's low risk of recidivism;

(3)  Josh's history and characteristics, to which the letters attached attest;

(4)  The undue harshness of the child pornography sentencing guidelines, which Courts and the United States Sentencing Commission have noted.

## I. BACKGROUND

### A. DEFENDANT'S BACKGROUND

The Court presided over the defendant's trial, in which the facts were fully aired. The Court has also been provided with the Presentence Investigation Report, which was performed

thoroughly. The defendant's familial and employment history was accurately captured in that report. Josh's personal background will only be described briefly here.

Joshua was born on January 22, 1987 to Edward and Vicki Wairi. He was the second of four sons. When Joshua was a child, his parents separated and Mrs. Wairi was left to raise her four sons as a single parent. Despite this, Joshua had a happy childhood, and, though money was scarce, his needs were met.



Joshuacelebrating a birthday



After graduating from Somerville High School in 2005, Joshua attended Salem State University, where he double-majored in Education and Sociology. He had long wanted to become a teacher, in order to pass along his love of school and learning.

Upon receiving his Bachelor's degree in 2009, Joshua was hired as a teacher at the Arthur D. Healy School in Somerville, where he worked until 2012. In September 2012, Joshua accepted a position at the Graham and Parks School in Cambridge. He was employed there until the time of his arrest.

Joshua was also involved in his hometown community. For three years, he served as a board member for the Somerville Community Corporation, a non-profit agency aimed at providing new goals and objectives to better the city. At the time of his arrest, Joshua was the Clerk of the Board.

Until this case, Joshua had never been arrested or charged with any criminal offense.

## B. FACTS OF THE CASE

On April 17, 2014, United States Postal Inspection Service (USPIS) searched Joshua's home pursuant to a warrant. After being advised of his Miranda rights, Joshua signed a waiver and spoke with investigators. Joshua was fully forthcoming in regards to how he traded child pornography over the internet. He provided detailed information as to how he obtained the material, how and where he stored the material, and the specific type of pornography he specifically sought from others.

During the course of this interview, Joshua volunteered that he had also secretly videotaped children changing their clothes. He provided details as to exactly when, where, and the manner in which these recordings took place. He also explained where the USPIS would be able to locate those videos.

At the conclusion of the interview, Joshua stated, "I feel relieved and I feel much better that I have been honest. I have made mistakes but I am taking responsibilities for my actions."[1]

---

[1] The presentencing report specifically quotes Joshua as making this statement after his detailed confession in order to "take responsibility" for his actions. ¶ 46. The same presentencing report then goes on to state that "The defendant has not demonstrated acceptance of responsibility for this offense." ¶ 77. These two positions contradict one another, as is discussed further in this memorandum.

Throughout the course of the investigation, Joshua was asked very direct questions about whether he had ever molested any children. Joshua told the authorities then, and has always insisted, that he never engaged in any inappropriate physical contact with children.[2] He was subsequently placed under arrest.

Although he has remained in federal custody since his arrest almost seventeen months ago, Joshua is fully aware of the significant publicity and outrage his case has generated. He was forced to resign his teaching position and surrender his teaching license shortly after his arrest. He has admitted to and taken responsibility for his actions, as is outlined further in this memorandum.[3]

Before trial, the defendant and government attempted to resolve the case via plea agreement. Joshua was willing to admit that he transported and possessed child pornography, but not that he made it. A resolution was impossible, as Joshua refused to plead guilty to production of child pornography, and the government refused to drop those charges, which arose through the recordings of children changing their clothes.

---

[2] During Joshua's detailed confession, in which he "relieved" himself of this dark secret once he was "honest," he expressly and adamantly denied any inappropriate touching of children, despite the uncorroborated allegations made by informant Michael Spears, discussed further in this memorandum.
[3] *See also Report of Psychological and Sexual Evaluation of Joshua Wairi*, attached.

At trial, Joshua, through counsel, informed the jury that he was guilty of transporting and possessing child pornography. This admission was repeated in his opening statement and closing argument. Joshua did not contest any of the evidence presented against him, and stipulated to the age and identities of the minor victims in order to avoid the need for those children to testify at the trial. On May 5, 2015, Joshua was found guilty of transportation of child pornography, 18 U.S.C. § 2252(a)(1), and possession of child pornography, 18 U.S.C. § 2252(a)(5)(B). He was acquitted on three counts of production and attempted production of child pornography, 18 U.S.C. §§ 2251(a) and (e). He remains in federal custody.

## C. PROCEDURAL SENTENCING FRAMEWORK

This Court must begin this proceeding "by correctly calculating the applicable Guidelines range[;]" however, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 48-49 (2007). The Court is to treat the guideline range as "one factor among several" to be considered when determining the appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court's directive is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.*, quoting 18 U.S.C. § 3553(a). "The sentencing court may not

mechanically assume that the GSR [Guideline Sentencing Range]
frames the boundaries of a reasonable sentence in every case."
*United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).

Recently, the First Circuit observed that "[t]he federal
sentencing guidelines are designed to serve as tools to assist
judges in performing one of their most consequential tasks.
They are not meant to dictate robotic sentencing outcomes."
*United States v. King*, 741 F.3d 305, 306 (1st Cir. 2014).

District courts are afforded sentencing discretion because
they are "in a superior position to find facts and judge their
import under § 3553(a) in the individual case." *Gall,* 552 U.S.
at 51. The district court "judge sees and hears the evidence,
makes credibility determinations, has full knowledge of the
facts and gains insights not conveyed by the record." *Id.*

## II. APPLICATION OF THE 18 U.S.C. § 3553(a) SENTENCING FACTORS

### A. NATURE & CIRCUMSTANCES OF THE OFFENSES, AND THE HISTORY & CHARACTERISTICS OF JOSHUA WAIRI

**1. Possession & Transportation of Child Pornography**

As Joshua has maintained since his arrest, he is guilty of
possessing and transporting child pornography. As with many
other young men, he began viewing pornography on the Internet as
an adolescent, at age 12. He first began watching pornography
featuring adult men and women. He did not find these materials
erotic, so he began watching adult gay pornography, and

pornography involving boys his own age. He continued these habits into adulthood.

Periodically, he would recognize that this behavior was wrong, and would stop watching illegal pornography. Eventually, though, he would succumb to his desire to view child pornography.

In his mind, Joshua felt that he was involved in a "fantasy world" in which children were not harmed in the making of these images. In the time since his arrest, however, his views have changed, and he now knows that his thought process was delusional, and that child pornography is, in fact, harmful to the children that are the subject of it.

## 2. Production of Child Pornography

As described above, Joshua contests that he was involved in producing child pornography. The jury agreed with him. He knows that the recordings that he made were wrong, and he regrets making them. However, this acquitted conduct should not be considered in his sentencing. Doing so would undermine the jury's ultimate determination, and nullify its well-considered verdict. *See, e.g., United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005) ("when a court considers acquitted conduct it is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved.").

It is important to note that a bill, H.R. 2944, has been introduced in Congress with bipartisan support. This bill, if it passes, would amend 18 U.S.C. § 3661 to read:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence, except that a court shall not consider conduct of which a person has been acquitted.

The defendant maintains that this view of sentencing is proper, and should apply here.

### 3. History and Circumstances of Joshua Wairi

As mentioned above, this is Joshua Wairi's first encounter with the criminal justice system. He lived an honorable, law-abiding life, giving back to his community.

The fact that any person was willing to write a letter on Joshua's behalf is notable, given the charges in his case. My office has received several such letters, all personal and heartfelt, remarking on the author's surprise at the instant charges, and praising Joshua's civic engagement and characteristics as a person. These letters are attached as Exhibit 1. One refrain in these letters is that people enjoy being around Joshua, and that he makes them feel better about themselves.

Joshua still receives the support of his mother, who visits him regularly and has written a letter of support on his behalf.

He has remained in contact with several friends, who send him reading material, visit, and write to him. For example, Janine Lotti wrote that Joshua corresponds with her about day-to-day life in prison, and

> also tells me about things he is reading, spiritual sayings and faith-related healing and motivational words he has found useful, and new words he learns as he jumps through the prison library selections. . . Many of the letters mention how he hopes that he can use this growth and apply it to do something good when his time in prison comes to an end.

Leigh Perham and David Adams also described keeping in touch with Joshua through letters and phone calls.

## B. THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT & AFFORD ADEQUATE DETERRENCE, AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT

### 1. Seriousness of the Offense

A sentence of five years to serve, followed by ten years of probation is a hefty sentence, and adequately represents the seriousness of the offense.

One factor cited to support laws against child pornography is that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites," thus leading to the victimization of more children. Child Pornography Prevention Act, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996). This may be true of some

offenders, but it is not true of Joshua. Despite the media
attention in the area that his case has generated, not one
student has come forward with an accusation against Josh. This
factor distinguishes Joshua from the offenders Congress sought
to punish. *See*, *e.g., United States v. Kelly*, 868 F. Supp. 2d
1202, 1204 (D.N.M. 2012) ("Yet within the realm of these crimes,
there remains an important distinction between those who create
and facilitate child pornography and those who only view it.
Kelly has not been accused of creating child pornography or
molesting children, and there is no evidence he would likely do
so in the future."); *United States v. Grober*, 595 F. Supp. 2d
382, 404 (D.N.J. 2008), aff'd 624 F.3d 592 (3d Cir. 2010)
("Compared to the predators who performed the abuse on the
children depicted in the pornography [Defendant] downloaded,
[Defendant's] conduct is manifestly less culpable. . . the Court
cannot make [Defendant] a surrogate for the monsters who prey on
child victims through actual contact.").

Another of Congress's concerns regarding child pornography
is that "child pornography is often used as part of a method of
seducing other children into sexual activity." Child Pornography
Prevention Act, Pub. L. No. 104-208, § 121, 110 Stat. 3009,
3009-26 (1996). There is no evidence here, nor is there any
allegation, that Joshua ever used child pornography to entice a
child. *E.g., United States v. Stern*, 590 F. Supp. 2d 945, 952

(N.D. Ohio 2008) (noting that the defendant never possessed child pornography "in order to entice a child.").

Finally, it should be noted that Josh's use of pornography began in his adolescence. It is well-established that the brain, judgment, and reasoning skills of an adolescent are drastically inferior to those of an adult. *See*, *e.g., Miller v. Alabama*, 132 S.Ct. 2455 (2012); *Roper v. Simmons*, 543 U.S. 551 (2005). As a result, Joshua should be considered less culpable than an offender who begins consuming child pornography as an adult. *See Stone*, 590 F. Supp. 2d. at 953 ("This Court thus considers Stern's age at the time he began his use a factor that weighs heavily in favor of a deviation under § 3553(a)."). Josh's psychosexual evaluation, included as Exhibit 2, notes that his early exposure to pornography may somewhat explain his interest in child pornography, stating:

> As he aged, Mr. Wairi continued to view the images that he first saw via the Internet, and some of these images involved children. He began masturbating to these images early in his sexual development and that masturbation has served as positive *reinforcement* to that behavior and, therefore, he has been behaviorally conditioned to an arousal response to such images.

## 2. Just Punishment & Adequate Deterrence

The proposed punishment is severe.

A five-year prison sentence is not a "slap on the wrist," especially for someone who has never spent a day in jail, has no history of violent or assaultive conduct, had discontinued the criminal conduct before

any investigation focused on him, and voluntarily
provided much of the evidence used to prosecute him.
And of course, there are also significant lifetime
collateral consequences that flow from the conviction
for this offense.

*United States v. Ontiveros*, No. 07-CR-333, 2008 WL 2937539, at

*6 (E.D. Wis. July 24, 2008). Here, as in *Ontiveros*, Joshua had

never spent time in jail, had no history of any criminal

conduct, and had attempted to give up watching child pornography

on his own before he was investigated, sometimes for years. He

also made a statement to investigators after he was advised of

his Miranda rights. This sentence – five years in prison, ten

years of supervised release, lifetime sex offender registration,

as well as the collateral consequences, including loss of

employment and reputation – is severe enough to provide

deterrence to any other offenders who are capable of being

deterred.

There is no reason to believe that giving Joshua a

lengthier sentence would have any impact on the child

pornography market. "While the public's outcry for harsher

sentences in child pornography cases is certainly

understandable, there is not a single sliver of evidence in this

sentencing record remotely supporting the notion that harsher

punishment would reduce the flow of child pornography on the

Internet." *United States v. Beiermann*, 599 F. Supp. 2d 1087,

14

1103 (N.D. Iowa 2009) (imposing sentence of 90 months in prison, with ten years of supervised release).

### 3. Need to Protect the Public

Joshua watched child pornography and filmed students changing, both of which he now realizes are not harmless activities. However, there is no reason to assume that, because of these charges, he will hurt a child in the future. *See Beiermann*, 599 F. Supp. 2d at 1112 ("mere revulsion for child pornography offenses is not a reliable indicator of the need to protect the public from defendants who commit such offenses."); *Ontiveros*, 2008 WL 2937539, at *5 (E.D. Wis. July 24, 2008) ("the fact that a person was stimulated by digital depictions of child pornography does not mean that he has or will in the future seek to assault a child. [Defendant], like all human beings, has free will, and neither a psychologist, nor a judge, can predict what a person will choose to do in the future. A court should exercise caution to avoid imposing a sentence for a crime some fear a defendant could commit in the future, instead of for the crime he actually committed and for which he is before the court.").

The psychosexual evaluation states that Joshua could be safely managed in the community if he (a) participates in an outpatient sexual offender treatment program; (b) "participate[s] in behavioral therapy to help him understand and

control his deviant sexual interests;" (c) explores his sexual identity with a psychologist; (d) does not have unsupervised access to the Internet; and (e) participates in regular polygraphs to ensure he is not engaging in inappropriate sexual behaviors.

Further, upon his release, Joshua will have to register as a sex offender. This factor alone, in addition to the above listed conditions, has built-in protections to ensure the safety of children, such as providing notice to the authorities and the public about Josh's location and past offenses. This requirement is relevant to the protection of the public. *E.g., United States v. Autery*, 555 F.3d 864, 876 (9th Cir. 2009) ("[Defendant] must register as a sex offender, a designation that carries both societal stigma and numerous practical restrictions designed to protect children. Under the circumstances, it was not an abuse of discretion to conclude that—compared with a prison sentence of forty-one to fifty-one months—a sixty-month probationary period combined with all the referenced restrictions will adequately protect the public.").

## C. THE KINDS OF SENTENCES AVAILABLE

Transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) carries with it a sentencing range of 5 to 20 years imprisonment and a $250,000 maximum fine.

Possession of child pornography, in violation of 18 U.S.C. §
2252A(a)(5)(b), does not have a mandatory minimum. The maximum
sentence is 20 years and a $250,000 fine. Per 18 U.S.C. §
3583(k), the Court shall impose a term of supervised release of
five years to life per count.

### D. THE  KINDS OF SENTENCES AVAILABLE AND SENTENCING RANGE PURSUANT TO THE GUIDELINES

**1. The Sentencing Guidelines are Too Harsh**

Many judges and commentators have criticized the child
pornography sentencing guidelines for being too severe. A survey
by the Sentencing Commission found that "around seventy percent
of federal judges consider the sentencing guidelines too severe
for child pornography possession and receipt cases." Melissa
Hamilton, *The Efficacy of Severe Child Pornography Sentencing:
Empirical Validity or Political Rhetoric?*, 22 Stan. L. & Pol'y
Rev. 545, 545-46 (2011) (hereinafter "*Severe Child Porn
Sentencing*").

The First Circuit has indicated concerns about the
perceived severity of the child pornography guidelines. *E.g.,
United States v. King*, 741 F.3d 305, 309 (1st Cir. 2011) ("We
are not unsympathetic to concerns about perceived harshness in
the child pornography guidelines."). *United States v. Stone*, 575
F.3d 83, 97 (1st Cir. 2009) involved charges of knowingly
transporting and shipping child pornography in interstate or

foreign commerce. Though the Court affirmed the defendant's sentence, it stated:

> . . . we wish to express our view that the sentencing guidelines at issue are in our judgment harsher than necessary. As described in the body of this opinion, first-offender sentences of this duration are usually reserved for crimes of violence and the like. Were we collectively sitting as the district court, we would have used our *Kimbrough* power to impose a somewhat lower sentence.

Other circuits have similarly expressed concern about child pornography sentencing. In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) the Second Circuit held that a Guideline range of 262 to 327 months based on a total offense level of 39 was unreasonable for a defendant who pled guilty to one count of distribution of child pornography for possessing videos depicting minors engaging in sexually explicit conduct and for trading these videos online. The Court observed that the defendant's Guideline range could have been considerably lower if he had actually engaged in sexual conduct with a minor rather than merely possessed and distributed images. *Id.* at 187. "[A]dherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders. . ." As a result, the Court rejected the Guideline range. *Id.*

**2. The Enhancements Should Not Apply Here**

The Probation Department calculated Josh's base offense level as 22, and provided enhancements for material depicting a prepubescent minor (+2); distribution in exchange for a thing of value, to wit, more pornography (+5); use of a computer (+2); and 600 or more images (+5). He was not given credit for acceptance of responsibility (potentially -3), so his total offense level was determined to be 36.

Enhancements are meant to distinguish the worst offenders from all others. However,

> [s]tatistics show that of non-production child pornography cases sentenced in 2009, at least one enhancement applied in every case and several specific enhancements applied in a substantial majority of cases: 97% for use of a computer, 97% for number of images, 95% for a child under twelve years. . .

*Severe Child Porn Sentencing* at 568. This is because the Guidelines are outdated. As stated in the United States Sentencing Commission Report to Congress regarding Federal Pornography Offenses (hereinafter "USSC Report"):

> Several provisions in the current sentencing guidelines for non-production offenses – in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images – originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child

pornography offenses are now being applied routinely
to most offenders. (internal citations omitted).

p. 313, available at http://www.ussc.gov/sites/default/files/

pdf/news/congressional-testimony-and-reports/sex-offense-

topics/201212-federal-child-pornography-offenses/Full_

Report_to_Congress.pdf.

The USSC stated that the enhancement for distribution

in §2G2.2(b)(3) has had some inadvertent effects:

> The existing enhancement for distribution of child
> pornography, §2G2.2(b)(3), indirectly punishes some
> offenders for their involvement with child pornography
> communities, insofar as Internet-based communities
> such as Internet chat rooms or bulletin boards
> dedicated to child exploitation serve as forums in
> which child offenders often trade child pornography.
> However, that enhancement — in particular, its
> incremental 2- to 7-level enhancements for different
> types of distribution — was not designed to punish
> community involvement per se.

*Id.* at 323 (internal citations omitted).

### **Prepubescent Children**

An enhancement should not apply if the conduct that forms

the basis of the enhancement is common to or typical of the

underlying crime. "As other courts have noted, images of very

young children are sadly 'typical of this crime,' and do not

indicate increased culpability for those receiving such images."

*United States v. Biddle*, No. 1:13-CR-50-TLS, 2014 WL 5089187, at

*7 (N.D. Ind. Oct. 9, 2014) (declining to apply enhancement as

it "would not appropriately measure the Defendant's culpability under the facts of this case.").

The USSC notes that its "data show that virtually all offenders (96.3%) possess images of minors who were prepubescent or under 12 years of age." USSC Report at 312. It further notes that "typical child pornography images contained in federal offender collections depict prepubescent children engaging in explicit sexual conduct." *Id.* at 84. If this behavior is typical to the underlying offense, it should not form the basis of a special enhancement. The defendant urges this Court to not apply this enhancement.

### Distribution in Exchange for a Thing of Value

The enhancement for a "thing of value" should be used to punish those offenders who fuel the market for child pornography by profiting from distribution of the materials. *E.g., United States v. Hanson*, 561 F. Supp. 2d 1004, 1009 (E.D. Wis. 2008) ("The guideline also carries a 5 level enhancement for trading images for a 'thing of value,' . . . which may, as in this case, mean other images of child pornography. . . . This case in no way involved commercial activity or profit from these types of images, yet the guideline imposed on defendant the same degree of enhancement as may be imposed on a commercial peddler.") (internal citations omitted). It should not be applied in run of the mill cases of viewers trading pornography.

The vast majority of offenders who distributed child pornography in early 2012 (85.3%) did so using peer to peer ("P2P") file sharing programs, as was done in this case. USSC Report at 166. If an enhancement applies to over 85% of offenders, it is not effective in isolating the most culpable defendants. "Some enhancement under § 2G2.2(b)(3)(F) is nearly always applied to defendants for "distribution" of pornography because most violators trade pornography in order to receive pornography. . . Nothing about [defendant's] 'distribution' renders [him] an atypical or particularly culpable defendant." *United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *13 (N.D. Ill. Oct. 27, 2009). This enhancement should not be applied.

## Use of a Computer

The Department of Justice, in its July 11, 2013 letter to the Sentencing Commission, stated that "the enhancement for the use of a computer in §2G2.2(b)(6) is no longer useful and should be eliminated." *Available at* http://www.justice.gov/sites/ default/files/criminal/legacy/2013/07/11/2013annual-letter-final-071113.pdf at 12 (hereinafter "DOJ Letter"). Judge Robin J. Cauthron (W.D. Okla), stated in her remarks to the Sentencing Commission: "As widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved." *Available at*

http://www.ussc.gov/sites/default/files/pdf/ amendment-process/public-hearings-and-meetings/20091119-20/Cauthron.pdf at 5. The defendant agrees with these sentiments, and urges the Court to not apply this enhancement. *E.g., Biddle*, 2014 WL 5089187, at *7 ("For this Defendant, the computer enhancement does not correspond to an elevated seriousness of his offense or to any of the purposes of sentencing. . . . empirical data does not show that using a computer as a means to possess and view pornography is a more serious or culpable offense than viewing the same images if they had been received by another medium, such as through the mail.").

## 600 or More Images

The Department of Justice has urged revision of the image quantity table in the enhancement for number of images, "so as to better distinguish between occasional and habitual collectors of child pornography." DOJ Letter at 12. The number of images enhancement does not reflect the offender's culpability, as many courts have recognized, and should not be applied here. *E.g., United States v. Maguire*, 436 F. App'x 74, 78 (3d Cir. 2011) ("Regarding the enhancement for the number of images, pursuant to § 2G2.2(b)(7)(D), the District Court stated 'the number of images doesn't reflect intent any longer, because the click of the mouse can result in many more images than anybody ever really perhaps wanted. Although he has them. But I don't view

that as making the crime worse in this case, the number of images.'"); *Biddle*, 2014 WL 5089187 at *7 ("Although the Guidelines provide for a five-level enhancement for more than 600 images. . . these distinctions are not linked to any empirical data pertaining to sentencing and the purposes of punishment, and in this case they do not provide an accurate indication of culpability"); *United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010) ("The number of images enhancement is also questionable because, as a result of internet swapping, offenders readily obtain the necessary number of images with minimal effort. . . . In any event, to the extent that the number of images a defendant possessed may serve as a valid proxy for the harm he caused, nearly doubling his sentence—as occurred in this case—overstates that harm. Sadly, the worldwide market for child pornography is so vast that the relative impact of several hundred additional images is minuscule, yet results in a significant increase in the guideline range.") (internal citations omitted).

## Acceptance of Responsibility

The Notes to USSG §3E1.1 describe factors relevant to determining whether the defendant has accepted responsibility and qualifies for a deduction in his offense level. These factors include "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not

falsely denying any additional relevant conduct for which the defendant is accountable" and "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense." Here, Joshua admitted the conduct comprising each offense he was convicted: he admitted it to investigators, he admitted it when he attempted to plead guilty to these charges, and he admitted it to the jury, through counsel, several times at trial. Since the time of his arrest, up to and throughout the trial, the defendant has never denied any of the evidence presented during the prosecution of this case.[4]

Courts have granted a reduction for acceptance of responsibility even in cases where the defendant went to trial and was convicted of the offense. *E.g., Burns*, 2009 WL 3617448, at *6 ("The court is persuaded by the remorse [defendant] demonstrated at his allocution and elsewhere which shows that he has accepted responsibility for his actions. The court will accordingly apply the two-point deduction because [defendant's] decision to go to trial was reasonably motivated by his belief that his civil rights were violated in the search and seizure of his computer.").

While Joshua had no option other than to take this case to trial in order to be acquitted of the most serious charges, which he did not commit, he has always accepted responsibility

---

[4] The allegations by Michael Spears, which the defendant denies, were never presented as part of the prosecution of this case.

for his actions. He now fully appreciates the harm he has caused. The defendant should receive a three-level decrease for his acceptance of responsibility, as the government should not be permitted to unreasonably withhold the third point where the defendant offered to plead guilty to each charge that resulted in a conviction.

Based on the above, the following calculation would result in the appropriate offense level:

| | | | |
|---|---|---|---|
| Base level offense | 22 | §2252A(a)(1) | |
| Prepubescent Minors: | +2 | §2G2.2(b)(2) | Should not apply |
| Use of Computer: | +2 | §2G2.2(b)(6) | Should not apply |
| 600 or more Images: | +5 | §2G2.2(b)(7)(D) | Should not apply |
| Exchange for Value | +5 | §2G2.2(b)(3)(B) | Should not apply |
| Acceptance of Responsibility | -3 | §3E1.1 | |
| TOTAL OFFENSE LEVEL | 19 | | |

## E. ANY PERTINENT POLICY STATEMENT

The defendant submits that the policy statements excerpted above are the most relevant to the instant sentencing.

## F. THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES

Unfortunately, as many courts have decried, the sentencing guidelines are often not adhered to because of their harshness. This results in disparate sentences for similar conduct, the very problem the sentencing guidelines were meant to correct. As

stated in *United States v. Rothwell*, 847 F. Supp. 2d, 1048, 1054

(E.D. Tenn. 2012):

> The reality, however, that so many courts are imposing
> sentences of defendants convicted of child pornography
> offenses outside of USSG §2G2.2, coupled with the
> multiple criticisms of it … must give any court pause
> when sentencing a defendant under USSG §2G2.2.

However, the defendant's recommended sentence is in line

with others in this district:

In *United States v. Fernando Crespo-Rios*, 787 F.3d 34 (1st

Cir. 2015) the defendant pled guilty to transferring obscene

material to a minor, and possessing child pornography. Though

Probation calculated a guideline sentencing range between 70 and

87 months, and a term of supervised release between 5 years and

life, the district court sentenced the defendant to imprisonment

for the time that he had already served – which amounted to 13

days – and 15 years of supervised release with, among other

conditions, no access to the internet, a requirement that he

register as a sex offender, and a requirement that he

participate in sex offender treatment. The First Circuit

remanded for resentencing because the district court failed to

provide an adequate explanation of its sentence, but the Court

noted "[t]o be clear, we do not decide whether the sentence

imposed in this case is substantively unreasonable."  787 F.3d

at 39. Significantly, the Court did not express shock or dismay

at the trial court's imposition of incarceration of 13 days when

the guideline range was 70 to 87 months, and Judge Torruella, in dissent, wrote that he would have upheld the sentence.

*United States v. Almeida*, 63 months in prison and five years of supervised release, with sex offender registration upon release, for distribution and possession of child pornography;

*United States v. O'Hern*, 63 months in prison followed by five years of supervised release, $12,500 fine, for distribution and possession of child pornography;

*United States v. Keller*, 78 months in prison and five years of supervised release, with sex offender registration upon release, for two counts of receipt of child pornography and possession of child pornography;

*United States v. Woodward*, 70 months in prison and seven years of supervised release for possession of child pornography, where even during his incarceration pending sentencing, the defendant "created stories and hand drawn illustrations of young girls being raped, tortured and mutilated. The defendant distributed some of those drawings to other inmates." *See FBI Press Release,* Sept. 23, 2009, *available at* https://www.fbi.gov/boston/press-releases/2009/bs092309.htm.

G. THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS

At the time of the creation of the PSR, no victims of the convicted conduct had been located. Further, the defendant is indigent, and thus unable to pay a fine.

## III. CONCLUSION

Joshua Wairi moves that the Court depart downward and/or vary downward from whatever guidelines range it determines to be appropriate under the advisory guidelines and impose a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment and deterrence under 18 U.S.C. §3553. The defendant submits that the appropriate sentence is five years' imprisonment, ten years' supervised release, and sex offender registration.

JOSHUA WAIRI
By his attorneys,

CARNEY & ASSOCIATES

*J. W. Carney, Jr.*

J. W. Carney, Jr.
B.B.O. # 074760

Carney & Associates
20 Park Plaza, Suite 1405
Boston, MA 02116
617-933-0350
jcarney@CARNEYdefense.com

Benjamin P. Urbelis
B.B.O. # 672895
Urbelis Law, LLC
98 North Washington St.

Boston, MA 02114
(617) 830-2188
Ben@Urbalislaw.com

September 11, 2015


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.


*J. W. Carney, Jr.*
J. W. Carney, Jr.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


```
                                    )        CASE NO: 1:14CR10143WGY
UNITED STATES OF AMERICA )
                                    )
V.                                  )
                                    )
JOSHUA WAIRI                        )
                                    )
```

**AFFIDAVIT SUPPORTING DEFENDANT'S SENTENCING MEMORANDUM**

I, J. W. Carney, Jr., state that the facts contained in the attached motion are true to the best of my information and belief.

Signed under the penalties of perjury.


*J. W. Carney, Jr.*
J. W. Carney, Jr.


September 11, 2015